12742

NATIONAL BANK OF SOUTH CAROLINA v. PEOPLE'S GROCERY CO. *ET AL.*

(150 S. E., 478)

120

*Messrs. Purdy and Bland,* for appellant,

*Messrs. Epps and Levy,* for respondents,

October 8, 1929.

The opinion of the Court was delivered by MR. JUSTICE BLEASE.

The statement of facts appearing in the "Transcript of Record" is adopted by the Court and will be reported.

I am unable to concur in the proposed opinion of Mr. Justice Cothran. My reasons in brief, are these:

The lease, beginning June 1, 1920, and ending June 1, 1925, was for a term of years.

"Estates for years embrace all terms limited for a definite and ascertained period, however short or long this period may be, that is to say, they embrace terms for a fixed number of weeks or months, or for a single year, as well as for any definite number of years, however great." 35 C. J., 970.

By its express terms, the lease terminated five years from its date, or June 1, 1925, and no notice of of termination was required to be given by either the lessor or lessee. Section 5271, vol. 3, Code 1922.

It will be observed that the lease contained no covenants for renewal or extension thereof. It is not pretended by the appellant that there was any express renewal or extension of the lease.

Manifestly, the only effect of the memorandum of agreement indorsed on the lease and signed by the parties was (1) to reduce the monthly rent from $150 to $125 from December 1, 1923, until December 31, 1924, and (2) to give the lessor the option of terminating the lease on December 31, 1924, by giving the lessee notice of such termination on or before September 1, 1924. The lessor not having exercised the option by giving the required notice, the option passed out of the picture. After December 31, 1924, the lease, for the remaining portion of the term, was in precisely the same position it would have been in if the memorandum of agreement indorsed thereon had never been entered into.

The authorities cited by Mr. Justice Cothran unquestionably show that, in the absence of any agreement to the contrary, where a tenant for a term of years holds over after the expiration of the term, with the consent or acquiescence

of the landlord, he becomes a tenant from year to year on the same terms of the expired lease. This, of course, does not mean that the new term is necessarily for the same period as embraced in the expired term. If the expired term was for a year or more, the new term is for another year. If the expired term was for a period less than a year, as for a quarter, or for a month or week, then the new term will be for corresponding term.

But this is not the case where there is a new agreement. *Robinson v. Barton,* 113 S. C., 212, 102 S. E., 16; *Telephone Co. v. Bank,* 90 S. C., 50; 72 S. E., 878. In the absence of a new agreement, the tenant is liable for further rent upon the principle, not of contract, but of *quasi* contract. The landlord has the option whether to treat the tenant so holding over after a term of years as wrongfully retaining possession or as rightfully doing so; that is, whether to treat him as a trespasser or as a tenant. The tenant has no option in the matter. Tiff. Real Property, vol. 1, p. 245 et seq.; 35 C. J. pp. 1027 and 1029.

Exceptions 1 and 2 impute error to the trial Judge in admitting evidence of an oral agreement alleged to have been entered into by the lessor and lessee at the same time the agreement indorsed upon the lease was made, said alleged oral agreement relating to the character of the tenancy after expiration of the lease, June 1, 1925. If there was such an agreement, it is difficult to see how it could be said to vary the terms of either the memorandum of agreement indorsed upon the lease, which became a nullity after December 31, 1924, or of the lease itself, which terminated June 1, 1925. The parol agreement, if such there was, in no sense changed or varied the terms of either of said written contracts. Such new contract was to take effect after the expiration of the written lease, and not in derogation thereof, and determined the nature of the tenancy after June 1, 1925. The fact that such oral agreement was entered into at the same time that the written agreement indorsed upon

the lease was made is wholly immaterial, since it was a separate and independent agreement. The agreement indorsed upon the lease dealt with the rights of the parties during a part of the term covered by the lease, whereas the oral agreement related to their rights after the expiration of the lease. Surely the parties were at liberty to enter into a contract, either written or verbal, intended to govern their rights after the expiration of the written lease June 1, 1925.

The effect of the opinion of Mr. Justice Cothran is to wholly disregard the alleged oral agreement intended to take effect June 1, 1925, and to assume that there was a tenancy from year to year, and that the period of such tenancy became a part of the written lease, and therefore could not be changed by an oral agreement. Whereas, if there was an agreement between the parties determining the character of the tenancy after June 1, 1925, no tenancy from year to year was implied as a matter of law, since such a tenancy is implied only in the absence of an express contract. It is alleged in the answer of respondents that there was an oral agreement entered into between the parties prior to the expiration of the lease, determining their rights after the expiration of the lease. Testimony to establish such an agreement was competent, as there was no allegation that such contract was to continue for more than one year after June 1, 1925, and a parol lease for a period not exceeding one year, commencing at a future date, is not within the Statute of Frauds (C.v. Code 1922 § 5514). *Hillhouse v. Jennings,* 60 S. C., 392; 38 S. E., 597. It was certainly a question of fact for the jury as to whether respondents retained possession under the alleged oral agreement or held over without any agreement, and with the consent of acquiescence of appellant. If they retained possession under the alleged oral agreement and paid rent to appellant, such part performance would take the contract out of the Statute of Frauds, even if it were applicable.

But granting for the moment that there was no agreement between the parties, as is alleged in the answer of respondents, and that there was a tenancy from year to year implied as a matter of law, it is difficult to see how the period of such tenancy could be considered as an incident of the original lease, which expired June 1, 1925, and became wholly inoperative before any such tenancy could be implied as a matter of law. If there was such a tenancy, reference could be had to the lease only for the purpose of ascertaining the terms under which the tenants held. Most assuredly, the parties at any time could have entered into an agreement to change the character of the tenancy. To. adopt the view of Mr. Justice Cothran that the period of such tenancy became an incident of the original lease, and therefore could not be changed by an oral agreement between the parties, would place it beyond the power of the parties to enter into an oral agreement at any time after June 1, 1925, and prior to June 1, 1926. For these reasons, I think these exceptions should be overruled.

Whether or not there was such an oral agreement as alleged in respondents' answer was a question of fact. In submitting this question to the jury, the trial Judge committed no error. Exceptions 3 and 3A should be overruled.

I see no error on the part of the trial Judge as complained of in the other exceptions, and they should be overruled. Let them be reported.

For the foregoing reasons, I think the judgment of the Circuit Court should be affirmed; and a majority of the Court agreeing in this view, it is so ordered and adjudged.

MESSRS. JUSTICES STABLER, CARTER, and MR. ACTING ASSOCIATE JUSTICE GRAYDON, concur.

MR. CHIEF JUSTICE WATTS did not participate.

ON PETITION FOR REHEARING

*Per Curiam.* Petition refused.

MESSRS. JUSTICES BLEASE, STABLER, CARTER, and MR. ACTING ASSOCIATE JUSTICE GRAYDON concur.

Mr. Justice Cothran (dissenting) : The dissenting opinion heretofore filed by me is withdrawn; the following opinion will be considered as a dissenting opinion to the opinion submitted by Mr. Justice Blease, which has been made the judgment of the Court, and as a dissenting opinion to the proposed order refusing the petition of the plaintiff for a rehearing:

This is an action by the plaintiff as landlord, against the People's Grocery Company as tenant and others, for the rent of a certain storehouse in the city of Sumter, for the months of March, April, May, June, and July, 1926, five months at $125 per month.

The facts out of which the controversy has arisen are these:

On June 1, 1920, the parties entered into a written contract of lease whereby the bank leased to the defendants the storehouse in question for the period of five years, beginning June 1, 1920, and terminating May 31, 1925, at a rental of $1,600 per annum for the first two years and $1,800 per annum for the last three years payable monthly at the end of each month.

The tenants went into possession of the storehouse and paid the rent agreed upon up to about December 1, 1923. At that time, upon request of the tenants, the bank made the following indorsement upon the written lease: "The within contract is amended for good and sufficient considerations *and to this extent only,* namely: The rent is fixed at $125.00 per month, payable monthly, commencing December 1, 1923, and until December 31, 1924. If the lessor desires to terminate the contract at the end of the year 1924, it may do so by giving the lessee or occupant of the premises notice of such termination on or before September 1, 1924, and if such notice be given, the premises shall be surrendered on December 31, 1924."

The bank did not avail itself of the option contained in this indorsed memorandum amendment of the original lease.

The tenants continued in the possession of the premises under the original lease, except that the rent was reduced from $150 per month to $125 per month by the memorandum amendment. This reduction commenced, according to the terms of that amendment, on December 1, 1923, and ended on December 31, 1924. The tenants, however, held possession through the whole of the year 1925 and until February, 1926, past the time fixed for the expiration of the lease May 31, 1925, paying rent at the reduced figure, $125 per month. (Strictly speaking, the tenants were not entitled to that reduction beyond December 31, 1924, and were due the landlord $25 per month from January 1, 1925, to March 1, 1926, 14 months, $350; but as the plaintiff apparently waived that difference, it may be disregarded now.) They vacated the premises on February 22nd. There was evidence tending to show that the tenants gave notice that they intended to vacate the building some time between the 1st and 10th of February.

The plaintiff contending that the defendants having held over after the expiration of the lease, May 31, 1925, paying the rent regularly, became tenants from year to year, instituted the present action on August 3, 1926, to enforce the payment of the rent for the months of March, April, May, June, and July, 1926, 5 months at $125 per month, $625, claiming also that the tenants would be liable for the remaining months of 1926, as the rent became due for those months respectively.

The defendants in their answer allege that contemporaneously with the memorandum amendment "it was further agreed that the plaintiff should have the right to end and terminate the lease at any time after June 1, 1925, and the defendant understood that they should have the same right. That pursuant to said agreement notice was given to the plaintiff of the desire of the defendants to terminate the lease and vacate the premises, and ample opportunity was given to the plaintiff to re-lease the said premises."

The case was tried by his Honor, Judge Mauldin, and a jury and a verdict was rendered in favor of the defendants. From the judgment entered upon this verdict the plaintiff has appealed.

The plaintiff has filed a number of exceptions, but in my view of the law of the case the appeal turns upon the admissibility of the parol evidence offered by the defendants' and received over objection, which tended to sustain the defense above outlined.

The witness Plowden testified to what occurred between him, representing the defendant corporation, and the president of the bank, at the time the memorandum amendment to the lease was indorsed upon it: "In regards to after June 1st, he stated to me that after June 1st—that their lease would terminate as first agreed upon, but after June 1st, if there was no futher notice given—he said, I understood that the bank's business was growing—I understood he would have the privilege of calling for this building whenever he saw fit; that he didn't know what day the bank's business would be so large that he would have to have the building, but he would have the privilege of calling for this buildings at any time he saw fit after June 1st; and under those conditions I understood I would be liable to give up the building, as well as he was to call for it, and if he had a chance to use the building for the bank's purposes he had the privilege of giving me sufficient notice to vacate, and I would have the same privilege."

The plaintiff objected to the admission of this testimony upon the grounds that it would be in contravention of the written agreement entered into on that date, would be making a new agreement between the parties by parol contrary to the written paper, and would be in contravention of the Statute of Frauds. The objections were overruled.

I think that the testimony was inadmissible for three reasons:

1. It tended to vary an essential incident of the original written lease;

2. It tended to vary the terms of the agreement evidenced by the memorandum indorsed upon the original lease.

3. It purported to establish an agreement made in December, 1923, to be performed after June 1, 1925, not within twelve months, an agreement required by the Statute of Frauds to be evidenced by a writing.

Section 5271 of the Code provides: "Every lease or written agreement hereafter to be entered into, for the renting and leasing of lands and tenements, shall absolutely and unequivocally end and determine at the period therein stated, without it being obligatory on the tenant or the landlord to give the notice required by law."

It is manifest that this Statute was simply intended to relieve either party from the necessity of giving notice of the termination of the lease; as it is conceded in the opinion of Mr. Justice Blease as well settled by this Court and all others that a tenant, who holds over after the termination of a lease fixed at a certain date, is recognized as a tenant by the landlord, pays the rent according to the terms of the expired lease, and there are no circumstances by agreement or otherwise militating against the conclusion, becomes a tenant from year to year, and liable for the whole rent of the ensuing year (when the lease is one by the year) upon the same terms. *Hart v. Finney,* 1 Strob. 250; *State v. Fort,* 24 S. C., 510; *Telephone Co. v. Bank,* 90 S. C., 50; 72 S. E., 878; *Robinson v. Barton,* 113 S. C., 212; 102 S. E., 16; *Riggs v. U. S.* (D. C.) 12 F. (2d) 85; 35 C. J., 1035, 1101; *Matthews v. Hipp,* 66 S. C., 162; 44 S. E., 577.

Although the lease may have "absolutely and unequivocally" terminated on May 31, 1925, it still remained binding upon the tenants, if thereafter the tenancy became one from year to year, and upon the same rental terms. It retained sufficient vitality to contsitute the basis of an implied agreement, a material incident of and adhering to it.

·The object of the proposed parol evidence was to eliminate this incident of the lease—to establish an agreement that upon the termination of the lease the tenants could no longer, regardless of what they did, be considered tenants from year to year, but should be tenants at will; clearly I think altering a material incident of the original lease.

It thus appearing that it was an *important incident of the lease* that a holding over with the landlord's consent, and paying rent according to the terms of the lease, would constitute a tenancy from year to year, what actually did occur in the present 'instance, it seems clear that a parol agreement which tended to destroy this incident and convert the relation, a tenancy from year to year, into a tenancy at will necessarily tended to vary the legal effect of the lease.

II. The alleged agreement that after June 1, 1925, the tenancy should be one at will is claimed to have been made contemporaneously with and as a part of the memorandum amendment. It purports to ingraft a new element upon that amendment in the fact of the statement contained therein that it was to amend the lease in the matter of the monthly rental *"and to this extent only."* Instead of limiting it to that, the defendants would establish a conversion of the tenancy after June 1, 1925, into one at will.

III. It was not proposed that the agreement to create a tenancy at will would take effect until after June 1, 1925. It was entered into about December 1, 1923, 18 months before it was intended to take effect. It can only mean that after the lease terminated on May 31, 1925, under the terms of the Statute, the tenants should remain in possession until the landlord gave them reasonable notice to quit, a tenancy at will, an interest in real estate. The agreement was clearly within the inhibition of Section 5516 of the Code, the Statute of Frauds.

Reverse positions for a month: If the tenants had moved out on May 31, 1925, could it be contended that the land-

lord could have held them to a tenancy at will subject to cancellation upon reasonable notice? I do not think so.

In the leading opinion it is stated: "After December 31, 1924, the lease for the remaining portion of the time was in precisely the same position it would have been in if the memorandum of agreement indorsed thereon had never been entered into." Grant this to be true, it must then clearly appear that the tenants are endeavoring to set up by parol an agreement in reference to land that was not to be performed within 12 months, directly in the teeth of Section 5516.

It is declared in the leading opinion: "* * * A parol lease for a period not exceeding one year, commencing at a future date, is not within the Statute of Frauds. *Hillhouse v. Jennings,* 60 S. C., 392; 38 S. E., 597."

I do not think that the case cited does or should sustain this proposition. The opinion in the case concedes that: "The record does not disclose the fact that his Honor, the presiding Judge, was requested to rule upon this question, and, as he has not ruled upon it, it is not properly before this Court for consideration."

Furthermore, the facts of the case and the decision of the Court will disclose that the case was decided upon an entirely different ground, that it was unnecessary to consider the proposition, and that all that is said upon the subject is obiter dictum, if indeed there be a definite pronouncement upon it in the case.

It will be observed that there are two cases in the same volume (60 S. C.) with the same title; the cause of action in each growing out of the same transaction between Jennings and Hillhouse, page 373 (38 S. E., 599) and page 392 (38 S. E., 596.)

Jennings owned a tract of land in the upper part of Greenville County, where he lived and operated a farm, sawmill, and store. It appears that early in November, 1898, prior

to the 21st, he and Hillhouse entered into a verbal contract by which Hillhouse was to serve Jennings for a year, beginning November 21st, in the management of the store and attention to certain minor matters of business connected with the farming interests of Jennings. His compensation was fixed at $25 per month. Jennings agreed to furnish Hillhouse under a rent contract for the term of one year from the same day, November 21st, a certain portion of his farm, about 15 acres, a dwelling house, pasture, cattle lot, and outhouses; Hillhouse agreeing to pay as rent one-half of the crop produced on the 15 acres. Hillhouse promptly, at the time stated, entered upon the stipulated service *and went into possession of the rented premises.* (This is important, as will appear.) The parties had a bitter disagreement, and in June of the following year (1899), Jennings, with alleged circumstances of oppression and threats of violence, ejected Hillhouse from the premises and discharged him from further services under the contract. Hillhouse then brought two separate actions against Jennings, the one reported at page 373 of 60 S. C., 38 S. E., 599, 601, for $135.16, his salary at $25 per month from June 19, 1899, to November 21st; and the other reported at page 392 of 60 S. C., 38 S. E., 596, 599, for $3,000 damages for the alleged trespass. In the first action the plaintiff suffered a nonsuit, which was sustained by this Court upon this ground: "The complaint alleged and the testimony offered showed that the verbal contract was made some time in the month of November, 1898—prior to the 21st November, 1898—for the service of plaintiff, to begin in said 21st November, 1898, and to continue during the year thereafter. It was expressly held in *Duckett v. Pool* (33 S. C., 238, 11 S. E., 689,) *supra,* that, as between the parties themselves, as to a contract to begin in the future, after the making of the contract, which contract was for one year's services, the fourth Section of our Statute against frauds and perjuries applied; that is, the said Section forbade an action to enforce the provisions of said verbal contract."

In the second action the presiding Judge directed a verdict in favor of Jennings upon the manifest ground that the verbal agreement of leasing was inhibited by the Statute of Frauds. Upon appeal the judgment was reversed, and it is illuminating upon the present issue to observe the ground of reversal. It was not that the verbal lease to commence at a future day was a valid lease, not within the Statute of Frauds, but: "We have shown that, when a tenant enters under a parol lease, he has a right of possession for a term of 12 months from the time of entry. This right entitles him to bring an action for a trespass on the lands during that time." That Hillhouse was lawfully in possession and his action was assimilated to an action *quare clausum fregit*. It will be observed that in summarizing the principles deduced from the Statutes not a word is said to the effect that a verbal agreement for a lease of land to commence at a future day is valid. I do not see how that statement could have been made in the face of the Statute which forbids an action upon an "agreement that is not to be performed within the space of one year *from the making thereof*." In fact I do not think that the case announces any such principle. The syllabus from the case in the S. E. Reporter shows a clear apprehension to the contrary: "A parol lease for a longer term than 12 months is within the Statute of Frauds, but, if the tenant is permitted to enter thereunder, he has a right to possession for 12 months from the time of his entry."

This leads me to conclude that the Reporter's syllabus is a misapprehension of the point involved in the case.

If the doctrine contended for, be deemed to have been announced in that case, is it not remarkable that in an action between the *same parties,* in the *same volume,* that part of the same agreement which provided for the services of Hillhouse was held violative of the Statute because it was not to be performed within a year and the other not?

In *Higgins v. Gager,* 65 Ark. 604, 47 S. W., 848, it was held that where a parol lease for one year was so bound up with a parol contract not to sell cigars for one year as to form an entire contract (performance in both cases to commence at a future day), no action could be maintained on the lease though itself not within the Statute, since the parol agreement as to the sale of cigars was void.

I do not think that there can be a question but that Section 5272, Vol. 3, of the Code, must be construed in connection with Section 5516.

Section 5272 is: "No parol lease shall give a tenant a right of possession for a longer term than twelve months from the time of entering on the premises; and all such leases shall be understood to be for one year, unless it be stipulated to be for a shorter term."

Section 5516 is: "No action shall be brought whereby to charge any executor or administrator upon any special promise to answer damages out of his own estate; or whereby to charge the defendant upon any special promise to answer for the debt, default, or miscarriage of another person; or to charge any person upon any agreement made upon consideration of marriage, or upon any contract of sale of lands, tenements or hereditaments, or any interest in or concerning them; or upon any agreement that is not to be performed within the space of one year from the making thereof; unless the agreement upon which such action shall be brought, or some memorandum or not thereof, shall be in writing, and signed by the party to be charged therewith, or some person thereunto by him lawfully authorized."

These two Sections are parts of the Code of 1922; each is entitled to its full force; the only reasonable construction to be placed upon them is that the parol lease permitted by Section 5272 is a lease which must become operative within "one year from the making thereof."

It is conceded that quite a number of decisions of other States are to the effect that a parol lease for a year or less

may be effective notwithstanding the fact that its beginning is *in futuro;* in other words, that the time between the making and the beginning is not to be counted. They are based upon the holding that the Statute in reference to agreements not to be performed in a year has no application to real estate. They are largely upon the fact that the Statute contains several separate divisions, in one of which is the inhibition as to contracts relating to sales of lands and leases exceeding one year, and in a separate one is the inhibition as to contracts not to be performed in a year. In the last the expression "from the date thereof" appears, while in the other relating to leases it does not. This is siezed upon to demonstrate that the expression in the latter was not intended to apply to the former. In our Statute, Section 5516, both are in the same Section.

Section 5515 is: "No leases, estates, or interests either of freehold or term of years, or any uncertain interests of, in, to or out of any lands, tenements, or hereditaments, shall at any time be assigned, granted, or surrendered, unless it be deed or note, in writing signed by the party so assigning, granting or surrendering the same, or his agent thereunto lawfully authorized by writing, or by act and operation of law."

In *Davis v. Pollock,* 36 S. C., 544, 15 S. E., 718, 721, it is held that Section 5515 does not prevent the creation of a parol lease; otherwise it would be in conflict with other Sections enumerated which recognize their validity for certain purposes; the Court saying: "While, therefore, we are not prepared to say that a parol lease for a term not exceeding one year may not be good and valid for some purposes, yet we are bound by the express terms of the fourth Section of the Statute of Frauds (Section 2019, Gen. St.) to say that no action can be brought to charge any person upon a contract, not in writing, for the lease of any real estate, not even for a term not exceeding one year, no matter what may be the amount of rent reserved by such lease."

If no action could be brought upon such a lease, it would appear anomalous to allow evidence of its creation.

The following authorities I think are conclusive that a parol agreement for a lease, to commence at a day in the future, which is not to be performed within a year from the making thereof, is violative of the Statute:

In *Winter v. Spradling* (Mo. App.) 145 S. W. 834, the syllabus is: "Under Rev. St 1909, § 2783, providing that no action shall be brought to charge one upon a lease of lands for a longer period than one year, or upon any agreement that is not to be performed within one year from the making thereof unless the agreement or some memorandum thereof shall be in writing, an oral lease of land was unenforcable when made in July of one year for a period to extend one year from March 1st of the Next year."

*Birnbaum v. Salomon,* 22 Fla. 610, involved a parol lease for three years to commence in futuro, and it was said that a parol lease for one year to commence in futuro is void under the Statute of Frauds, citing *Croswell v. Crane,* 7 Barb. (N. Y.) 191; *Delano v. Montague,* 4 Cush. (Mass.) 42; *Wilson v. Martin,* 1 Denio (N. Y.) 602. The Florida Statute then in force provided that no action should be maintained upon a parol contract for sale of lands, or "for any lease thereof for a period longer than one year, or upon any agreement that is not to be performed within the space of one year from the making thereof."

In *Delano v. Montague,* 4 Cush. (Mass.) 44, the action was upon an oral lease for one year to commence in futuro, and the Court said: "Upon these facts, it is very clear, that the action cannot be maintained.   *   *   * This was an agreement, that was not to be performed within one year from the time it was made; and by the Rev. Sts. c. 74 § 1, no action can be maintained on any such agreement, unless the same, or some memorandum or note thereof, shall be in writing." There was no exception in favor of parol leases in the Massachusetts Statute at that time.

In *Greenwood v. Strother* (Ky.), 16 S. W., 138, the syllabus is: "Under Gen. St. Ky., c. 22, § 1, providing that no action shall be brought 'upon any contract for the sale of real estate, or any lease thereof for a longer term than one year,' nor 'upon any agreement which is not to be performed within one year from the making thereof, unless the promise * * * be in writing,' no action lies on an oral contract for the letting of land for a term of one year commencing two months after the date of the contract."

In *Bain v. McDonald* (Ala.), 20 So., 77, the syllabus is: "A contract for the renting of land for the term of one year, to commence in the future, is 'an agreement not to be performed within one year from the making thereof,' which is required to be in writing by Code, § 1732, subd. 1; and such a contract, resting in parol, will not support an action to recover the rent, although payable within the year, the promise to pay and the consideration therefore not being serverable."

In *Butts v. Fox* (Mo. App.), 70 S. W., 515, the syllabus is: "1. A parol lease for one year, to commence in futuro, is void under the statute of frauds."

In *Philips-Neely Mercantile Co. v. Banks* (Ala.), 63 So., 31, the syllabus is: "A verbal contract, entered into in August or November for the rental of land for one year from January 1st following, is obnoxious to the Statute of Frauds (Code 107, § 4289, subd. 1), since it is not to be performed within 12 months from its making."

In *Hayden v. Clark* (Ky.), 108 S. W., 845, the syllabus is: "A verbal agreement to lease a farm for one year, to commence in the future, is void under the Statute of Frauds."

In *Moore v. Terrell* (Ky.), 111 S. W., 297, the syllabus is: "A parol lease for a year, to begin at a future date, is void, as an oral contract not to be performed within a year."

In *Boone v. Coe* (Ky.) 154 S. W., 900, the syllabus is: "An oral lease of land for one year, to commenced at a

future date, is void under the Statute of Frauds (Ky. St. § 470, subsec. 7), providing that no action shall be brought upon any oral agreement not to be performed within one year from the making thereof."

In *Thomas v. McManus* (Ky.), 64 S. W., 446, the syllabus is: "A parol contract for a lease for a term of one year, to begin at a future date, is within the Statute of Frauds, and therefore not enforceable."

In *Ray v. Blackman,* 120 Mo. App., 497, 97 S. W., 212, the syllabus is: "Rev. St., 1899, § 3418, provides that no action shall be brought to charge any person on a parol lease for a longer period than a year, or on a parol agreement not to be performed within a year of the making thereof. Held, that a parol lease made October 29, 1904, to commence January 1, 1905, and expire January 1, 1906, was not enforceable under such section."

In *Wickson v. Mfg. Co.* (Cal.), 79 Am. St. Rep., 36 [60 P., 764], the syllabus is: "Under a statute which requires an agreement to be in writing which 'by its terms is not to be performed within a year from the making thereof,' a parol agreement for a one year lease to commence in the future is invalid, since the Statute of Frauds applies if the time from the making of an agreement to the end of its performance exceeds a year never so little."

In *Kofoid v. Lincoln Implement & Transfer Co.* (Neb.), 114 N. W., 937, the syllabus is: "Where, in an action of forcible detainer, it appears that the defendant claims possession solely under a parol lease, for a longer period than one year from the making thereof, it is proper for the Court to direct a verdict for the plaintiff."

In *Brosius v. Evans* (Minn.), 97 N. W., 373, the syllabus is: "1. It conclusively appears from the evidence in this case that a contract from the leasing of premises was oral, and that it was not to be executed within one year from the date it was entered into, and it was therefore void under the Statute of Frauds."

In *White v. Levy* (Ala.), 9 So., 164, the syllabus is: "1. A verbal contract to lease property for one year commencing over three months *in futuro,* is within the Statute of Frauds."

In *Brodner v. Swirsky* (Conn.), 42 L. R. A. (N. S.), 654 [84 A., 104] the syllabus is: "1. A parol lease for a year made in May, to begin the following November, is void under the Statute of Frauds as not to be performed within one year."

In *White v. Holland* (Or.), 3 P., 573, the syllabus is: "A parol lease of lands for the term of one year, to commence at some future period, is an agreement not to be performed within a year, and therefore invalid under the Statute of Frauds adopted in this State."

In *Wessells v. Rodifer* (Ky.), 97 S. W., 341, the syllabus is: "A parol lease of real estate to begin in the future, and to continue from year to year as long as the lessee desires is within the Statute of Frauds and unenforceable."

In 27 C. J., 176, it is said: "A contract providing for a performance to extend one year from a future date is within the statute even though the time from the making to the complete performance of the contract exceeds the year by ever so little"—citing cases from Alabama, Arkansas, Arizona, Georgia, Iowa, Kentucky, Massachusetts, Michigan, Minnesota, Missouri, New York, Ohio, Rhode Island, Tennessee, Vermont, West Virginia, Wisconsin, and England.

But aside from this consideration, and assuming the existence and admissibility of the alleged parol agreement, it purported only to establish an agreement that at the end of the five-year term the relation should be that of a tenancy at will.

It is thoroughly settled by our authorities that where a tenant occupies the premises as a tenant at will and thereafter pays the rent according to the provisions of the prior lease, the tenancy at will is converted into a tenancy from year to year.

In *Telephone Co. v. Bank,* 90 S. C., 50, 72 S. E., 878, 881, the Court said: "In *Hillhouse v. Jennings,* 60 S. C., 392, 38 S. E., 596, one of the propositions laid down by Mr. Justice Gary for the Court was: 'A parol lease under which the tenant enters upon the premises shall after the term of 12 months from the time of entering upon the premises, have the effect of an estate at will only.' But, as held in *Hellams v. Patton,* 44 S. C., 454, 22 S. E., 608, and *Matthews v. Hipp.,* 66 S. C., 162, 44 S. E., 577, such a tenancy at will may be converted into a tenancy for the year by acts of the parties indicating that intention."

In *Hellams v. Patton,* 44 S. C., 454, 22 S. E., 608, 611, the Court said: "But, because the lease by itself creates an estate at will only, it does not necessarily follow that such an estate may not be converted into a tenancy from year to year by other circumstances. While this point has not, so far as we are informed, been distinctly decided in this State, yet it has been elsewhere, as may be seen by reference to the case of *Talamo v. Spitzmiller,* 120 N. Y., 37, 23 N. E., 980 (8 L. R. A. 221, also to be found in 17 Am. St. Rep., 607) where it is said: "The mere fact that a person goes into possession under a lease void because for a longer term than one year does not create a yearly tenancy. If he remains in possession, with the consent of the landlord, for more than one year, under circumstances permitting the inference of his tenancy from year to year, the latter could treat him as such, and the tenant could not relieve himself from liability for rent up to the end of then current year, or, as it is considered in this State, to the end of the calendar year. *Floyd v. Floyd,* 4 Rich. Law, 23; *Wilson v. Rodeman,* 30 S. C., 210, 8 S. E., 855. See, also, extended note by Mr. Freeman to the case of *Wallace v. Scoggins* (Or.) 17 Am. St. Rep. 752, 21 P. 558 (18 Or. 502) where, at page 755, in speaking of a parol lease, that distinguished writed says: "The better opinion is that such a lease is in itself void, and creates no tenancy whatever; and that if the lessee enters

under it, the tenancy is at will, unless from the payment and receipt of rent computed by the year, or from the circumstances, the inference may be legitimately drawn that the parties, notwithstanding the void lease, intended a tenancy from year to year."

In *Matthews v. Hipp*, 66 S. C., 162, 44 S. E., 577, 580, the Court said: "* * * if the defendant remained in possession of the premises after the expiration of one year from the time he entered thereon under a void lease, and while a tenant at will, paid the rent that accrued after the year from the time he first entered and continued in possession of the premises, the jury might very correctly have inferred that the tenancy at will had been changed into a tenancy from year to year."

In *Cochran v. Ward*, 5 Ind. App. 89, 29 N. E., 795, 51 Am. St. Rep. 229, it was stated: "The English rule is, that a parol lease in contravention of the provisions of the Statute, under which possession is taken, creates a tenancy at will, and payment of rent thereunder converts it into a tenancy from month to month or year to year, according as the rental period may be indicated by the payments: *Clayton v. Blakey,* 8 Term Rep. 3; Browne on the Statute of Frauds, Sec. 38."

In *Butts v. Fox* (Mo. App.) 70 S. W. 515, the syllabus is: "2. A parol lease for one year was void under the Statute of Frauds because the term was to commence *in futuro*. At the time set the lessee nevertheless entered, and paid yearly rent. Held, that he became a tenant year to year."

In 20 Cyc., 215, it is said: "Under the Statute verbal leases are allowed the effect of estates at will, and if there is an entry and payment of rent by the year or some fractional part thereof, the tenancy becomes one from year to year."

In 35 C. J. 1099, it is said: "As a general rule, a parol lease of lands for years is construed as creating only a tenancy at will, unless under the applicable provision of the

Statute of Frauds it may be good for a specified term. Such tenancy will, however, be subsequently changed into a tenancy from year to year by payment and acceptance of a yearly rent, although payment is made quarterly or monthly, and by other circumstances indicating that to be the intention of the parties, so that the almost universal rule at present is that a parol lease for years, under which possession is taken and rent paid, creates a tenancy from year to year, and this is so, even though the Statute provides that a lease not in compliance therewith shall have the effect of creating a tenancy at will"—citing an array of decisions from a dozen States and England.

This is exactly what the tenants did after the expiration of the term on June 1, 1925. It will be observed that the alleged parol agreement that after June 1st they would occupy as tenants at will contained no stipulation as to the rental rate; and when thereafter they paid the rent as fixed by the original lease, the payments were necessarily referable to the lease. If a tenancy from year to year, the defendants are liable for the rent for the remainder of the year 1925 and holding over after June 1, 1926, for the remainder of the year 1926.

The defendants also contend: "That in order to save any loss to the plaintiff herein on account of the defendants vacating the said premises the defendants procured a prospective tenant, but the plaintiff refused to treat with him or enter into any agreement in regard to a new lease of the premises, thus causing to the plaintiff any loss which it may have sustained."

They contend that it was the duty of the bank to minimize its alleged damages by accepting the offer of a third person to rent the property. This contention appears to assume the liability of the tenants for the rent for the remainder of the year. If so, there was no obligation on the part of the bank to relieve them of their liability; it was upon them to take care of themselves. The bank was under no obligation to accept another debtor for the one they had.

146

For these reasons I think that the petition should be granted.